IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| VERNESIA LEE WOMACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:08-CV-534-WKW[WO] |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

_____

| | | |
|---|---|---|
| GANESIA LEE WOMACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:08-CV-664-WKW[WO] |
| | ) | |
| UNITED STATES GOVERNMENT, | ) | |
| DEPARTMENT OF VETERAN AFFAIRS, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is the Recommendation of the Magistrate Judge ("Recommendation"). (Doc. # 32.[1]) Plaintiffs, who are proceeding *pro se*, filed objections to the Recommendation. (Doc. # 33.) For the reasons to follow, the Magistrate Judge's Recommendation is due to be adopted in part and rejected in part.

---

[1] The filings are referred to by their assigned docket number, with the exception of exhibits.

## I.  BACKGROUND

**A.     Those Portions of the Recommendation to Which No Objection Is Made**

Plaintiffs raise no objection to the Recommendation that the United States's Motion to Dismiss Ganesia L. Womack's Complaint (Doc. # 25) be granted.  The Recommendation found that Constitutional tort claims are not cognizable under the jurisdictional grant of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680.  (Doc. # 32, at 9-10 (citing *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994)).)  There also is no challenge to the Recommendation that Vernesia Womack's claim alleging a violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") be dismissed.  The Recommendation noted that "HIPAA does not create a private cause of action."  (Doc. # 32, at 11.)  The Magistrate Judge is correct on both grounds, and no objection having been lodged as to these recommendations, the Recommendation is due to be adopted.  This ends Ganesia L. Womack's lawsuit, but not Vernesia Womack's.

**B.     Those Portions of the Recommendation to Which Objection Is Made**

### *1.     Vernesia Womack's FTCA Claim*

In addition to her HIPAA claim, Vernesia Womack brings a claim under the FTCA against the United States for receiving inadequate and delayed medical care on November 18, 2005, when she sought treatment for abdominal pain at the Central Alabama Veterans Health Care System ("CAVHCS") in Montgomery, Alabama.  In her Complaint (Doc. # 1), Vernesia Womack avers that the emergency room physician, Dr. Stuart Smalheiser

2

("Smalheiser"), provided inadequate "medical treatment" by failing to "determine the severity of [her] symptoms" (Doc. # 1 ¶ 5). According to the Complaint, that delay began when Dr. Smalheiser sent Vernesia Womack home on the night of November 18, with directions to return to the CAVHCS for an ultrasound the following Monday (Doc. # 1 ¶ 5), and the delay further was exacerbated by a chain of events that had the effect of prolonging her surgery until November 27, 2005.[2]  The delay allegedly caused Vernesia Womack's "[gall]stones [to] extract[] from [her] gall bladder and lodge in [her] liver and common bile duct," thus resulting in an "intense" five-hour surgery and "eleven day stay in SICU/CCU." (Doc. # 1 ¶ 5.)

---

[2] As to the delay, the Complaint contains the following allegations. After the ultrasound on that Monday, Vernesia Womack "was dismissed home again with no answers or follow up from any medical staff" at the CAVHCS, but the "intolerable" and "unbearable" pain caused her to seek treatment at a local hospital's emergency room (Doc. # 1 ¶ 5). It was only after events that occurred at the local hospital that she was admitted to the CAVHCS on November 25, 2005, for emergency surgery. On November 25, Lakshmipathi Namineni, M.D. ("Namineni"), a surgeon employed by the Veteran's Administration, examined her. (Namineni Decl. ¶¶ 6-7 (Ex. 2 to Doc. # 24 ).) Based upon his diagnosis of "cholelithiasis (gallstones) and cholecystitis (inflammation of the gallbladder)," Dr. Namineni requested a surgical consultation from Dr. John Tinglin, who "performs all laporoscopic cholecystectomies" at the CAVHCS. (Namineni Decl. ¶¶ 8-9; Tinglin Decl. ¶ 5 (Ex. 3 to Doc. # 24).) After that consultation, Vernesia Womack was scheduled for surgery. (Namineni Decl. ¶ 9.) The surgery initially was scheduled for November 25 (Doc. # 1 ¶ 5), but was rescheduled for Saturday, November 26, because "the [a]nesthesiologist had a prior obligation" (Doc. # 1 ¶ 5). The surgery was postponed again because the "anesthesiologist had made plans with his family for the weekend." (Doc. # 1 ¶ 5.) Dr. Tinglin performed the gallbladder surgery on November 27. (Doc. # 1 ¶ 5; Namineni Decl. ¶ 10.) He "first attempted laporoscopic cholecystectomy, but due to the severely diseased condition of the gallbladder, [he] converted the procedure to an open cholecystectomy." (Tinglin Decl. ¶ 6.)

### *2.    The United States's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Vernesia Womack's Response*

The United States moved for dismissal of Vernesia Womack's FTCA claim for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[3]  (Doc. # 23, at 1; Doc. # 24, at 6, 8-10.)  As grounds for its Rule 12(b)(1) motion, the United States argued that Vernesia Womack cannot hold it responsible for Dr. Smalheiser's alleged negligent acts because, at all material times to this litigation, he was an independent contractor excepted from the FTCA's waiver of sovereign immunity.  (Doc. # 24, at 5-6.)  The United States pointed out that under the FTCA, which embodies a limited waiver of the United States's sovereign immunity, suits against the United States are permitted only for acts committed by "an employee of the Government while acting within the scope of his office or employment," 28 U.S.C. § 1346(b).  (Doc. # 24, at 9.)  Sovereign immunity, the United States argued has not been waived "for the actions of 'any contractor with the United States.'"  (Doc. # 24, at 9 (citing 28 U.S.C. § 2671).)

In support of its motion to dismiss, the United States submitted a declaration from Dr. Smalheiser.  In that declaration, Dr. Smalheiser, who is board certified in internal medicine, attests that, "[f]rom July, 2005 until June, 2006, [he] worked as a contract doctor in the

---

[3] As to Vernesia Womack's FTCA claim, the United States's singular motion (Doc. # 23) is twofold.  First, it moved for dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. (Doc. # 24, at 6, 8-10.)  Second, and alternatively, the United States moved for summary judgment on the ground that Dr. Smalheiser did not breach the appropriate standard of care in providing medical treatment to Vernesia Womack.  (Doc. # 24, at 7, 10-14.)  Both grounds are addressed *infra*, in Section III of this opinion.

4

emergency room, Life Support Unit (LSU), at [CAVHCS] Hospital in Montgomery, Alabama." (Smalheiser Decl. ¶ 3 (Ex. 1 to Doc. # 24).) He further attests, "I was not a Department of Veterans Affairs (VA) employee. I was paid on an hourly basis for my services in the LSU. The VA did not supervise my day-to-day care and treatment of patients. Rather, I exercised independent clinical judgment at all times when treating patients in the LSU." (Smalheiser Decl. ¶ 4.)

The Magistrate Judge opined that the United States was raising a Rule 12(b)(1) factual attack (as opposed to a facial attack) to subject matter jurisdiction and entered an Order giving Vernesia Womack a deadline by which to file a response to the motion and any evidentiary materials in support of her position that Dr. Smalheiser was a federal government employee. (Doc. # 27, at 2.) The Magistrate Judge noted that "any evidentiary materials submitted should be restricted to the establishment of jurisdiction." (Doc. # 27, at 1 n.1.)

In response, Vernesia Womack argued that Dr. Smalheiser was a participant in a fellowship program funded by the VA. (Doc. # 29.) She also submitted several exhibits. (*See*, *e.g.*, Exs. 3, 4 & 5 (Doc. # 29).) As described by the Magistrate Judge, one exhibit "appear[ed] to be a physician's profile printout from the Florida Department of Health" (Doc. # 32, at 14); the other two exhibits "appear[ed] to be excerpts from a [VA] Health Administration Handbook" (Doc. # 32, at 14). In rebuttal, the United States submitted a second declaration from Dr. Smalheiser, who said that he "was not a VA resident or fellow at CAVHCS and ha[d] never been enrolled in a VA training program." (Smalheiser 2d Decl.

5

¶ 3 (Ex. 6 to Doc. # 30)).)  Nor was he "supervised by the VA as a resident or fellow." (Smalheiser 2d Decl. ¶ 3.)  He reiterated that he "was working as a contract physician using [his] independent clinical judgment as a licensed, board certified internist."  (Smalheiser 2d Decl. ¶ 3.)

### 3.  *The Magistrate Judge's Recommendation*

After considering the evidence, the Magistrate Judge concluded that Vernesia Womack's exhibits constituted hearsay (Doc. # 32, at 15), that Dr. Smalheiser provided "specific factual declarations" within his personal knowledge, and that Vernesia Womack failed to rebut those declarations.  (Doc. # 32, at 15-16.)  Because Vernesia Womack "proffered no competent evidence to establish jurisdiction in opposition to the denials of the jurisdictional allegations contained in Dr. Smalheiser's affidavit," the Magistrate Judge reasoned that "she ha[d] not met her burden of establishing jurisdiction[.]"  (Doc. # 32, at 16.)  Consequently, the Magistrate Judge recommended dismissal of Vernesia Womack's FTCA claim, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  (Doc. # 32, at 16.)

### 4.  *Vernesia Womack's Objections to the Recommendation*

Vernesia Womack objects to the Recommendation on what appears to be two main grounds.  First, she asserts that Dr. Smalheiser's facts are "unclear" as to whether he is an employee or an independent contractor. (Doc. # 33, at 3.)  Second, she contends that she was "clearly misled by the United States about the employment status of Dr. Stuart Smalheiser

6

for approximately 2 ½ years after the incident; therefore, stripping [her] of [her] legal right to file suit in State Courts." (Doc. # 33, at 3.) Vernesia Womack, thus, argues that the United States should not be permitted to "bring evidence that Dr. Smalheiser was not an employee of the United States." (Doc. # 33, at 3.)

## II.  STANDARD OF REVIEW

The court reviews "de novo . . . those portions of the [Recommendation] or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

## III.  DISCUSSION

**A.     The United States's Rule 12(b)(1) Challenge**

There are two principal Rule 12(b)(1) issues, one substantive and one procedural. The substantive issue is whether Dr. Smalheiser is an employee of the federal government or an independent contractor. The FTCA only waives sovereign immunity for injuries caused by an "employee of the Government." 28 U.S.C. § 1346(b)(1); *Means v. United States*, 176 F.3d 1376, 1379 (11th Cir. 1999) ("The alleged tortfeasor's status as an 'employee of the government' is the *sine qua non* of liability under the FTCA." (citation omitted)). Injuries caused by "'any contractor with the United States'" are excluded from that waiver. *United States v. Orleans*, 425 U.S. 807, 814 (1976) (quoting 28 U.S.C. § 2671).

The procedural issue is whether the appropriate standard of review was applied when assessing whether Dr. Smalheiser was an independent contractor or a federal government employee. The Magistrate Judge stated, on one hand, that he would apply a "summary

7

judgment standard" but, on the other hand, that he was "free to weigh the evidence." (Doc. # 32, at 14; *see also* Doc. # 32, at 7.) As will be explained, the Magistrate Judge's former statement is correct, but the latter is not.

In *Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990), the Eleventh Circuit explained that, on a Rule 12(b)(1) factual attack, the district court "'may proceed as it never could under'" Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. *Id.* at 1529 (citation and internal quotation marks omitted). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation and internal quotation marks omitted); *accord Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008).

The court, however, is not at liberty to weigh the evidence when the factual attack "also implicates an element of the cause of action." *Lawrence*, 919 F.2d at 1529. The Eleventh Circuit "ha[s] cautioned . . . that the district court should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction *do not implicate the merits of plaintiff's cause of action*.'" *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (citation omitted);[4] *accord Miccosukee Tribe of Indians of Fla. v. United States*, 105 F.3d 599, 603

---

[4] In *Morrison*, brought under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, the Eleventh Circuit reversed the district court's ruling that the defendants' Rule 12(b)(1) motion to dismiss attacked only subject matter jurisdiction, and that "it [the district court] could properly act as a 'fact finder,' and 'weigh the evidence submitted by the parties.'" 323 F.3d at 924. The *Morrison* court held that "[t]he district court's decision to treat [the defendants'] attack as purely jurisdictional and resolve disputed issues of fact . . . erroneously invaded the province of the jury." *Id.* at 930. "The proper course in this case was to resolve the attack under Rule 56[.]" *Id.*

8

(11th Cir. 1997); ("[T]he jurisdictional question [was] intertwined with the merits of the [plaintiff's] claims"; hence, "the district court should [have] appl[ied] a summary judgment standard when ruling on the motion to dismiss as a factual attack on subject matter jurisdiction[.]").

In *Lawrence*, relied upon in *Morrison*, the Eleventh Circuit reiterated "the standard by which a district court should decide factual attacks on subject matter jurisdiction when the defendant's attack also implicates an element of the cause of action." *Lawrence*, 919 F.2d at 1529. It explained:

> [T]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. . . . Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion . . . . [A]s a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action. The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.

*Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. May 1981)[5]); *see also Morrison*, 323 F.3d at 922 (The Rule 12(b)(1) standard "is far less deferential to the plaintiff" than the Rule 56 standard.).

---

[5] In *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit prior to October 1, 1981. *Id.* at 1209.

9

*Simpson v. Holder*, 184 F. App'x 904 (11th Cir. 2006), although unpublished, is instructive. In *Simpson*, the Eleventh Circuit held that a Rule 12(b)(1) attack on subject matter jurisdiction is "intertwined with the merits" of an FTCA claim when the assertion is that the allegedly negligent actor is not an employee of the United States. *Id.* at 909. Hence, in *Simpson*, the Eleventh Circuit held that "[w]hether the . . . medical staff [were] government employees or independent contractors affect[ed] both subject matter jurisdiction under the FTCA *and* the merits of the FTCA claim," *id.* (citing *Lawrence,* 919 F.2d at 1529), and that, therefore, Rule 56's standard of review was implicated because matters outside the pleadings were considered, *id.*

Here, the United States filed its motion to dismiss pursuant to Rule 12(b)(1), challenging subject matter jurisdiction on the basis that "Dr. Smalheiser [was] an independent contractor, not a VA employee." (Doc. # 24, at 7.) It further asserted that its motion was "a factual attack on subject-matter jurisdiction" (Doc. # 24, at 7), and that the Magistrate Judge could "resolve any disputed issues of fact . . . material to the jurisdictional issue" (Doc. # 24, at 6).

The United States's reliance upon Rule 12(b)(1)'s standard for analyzing factual attacks on subject matter jurisdiction is misplaced. Applying *Simpson* and the other authorities cited above, the issue of whether Dr. Smalheiser is an "employee" of the United States, *see* 28 U.S.C. § 1346(b)(1), or an "independent contractor," *see* 28 U.S.C. § 2671, implicates both subject matter jurisdiction and the merits of Vernesia Womack's FTCA

10

claim. The Magistrate Judge, therefore, was required to "'find that jurisdiction exists and deal with the objection as a direct attack on the merits of the . . . case.'" *Lawrence*, 919 F.2d at 1529 (quoting *Williamson*, 645 F.2d at 415-16). Because the United States's motion indirectly challenged the merits of the FTCA claim, the motion should have been analyzed under either Rule 12(b)(6) or Rule 56, not Rule 12(b)(1).

On this record, the Magistrate Judge's statement that, under Rule 12(b)(1), he was "free to weigh the evidence" (Doc. # 32, at 14), although understandable in light of the United States's urging, was in error. Moreover, because evidence outside the pleadings was submitted and relied upon by the Magistrate Judge, review under Rule 12(b)(6) would have been inappropriate. *See Morrison*, 323 F.3d at 924 ("[T]he district court could not have considered [the plaintiff's] motion under Rule 12(b)(6) because in rendering its decision the court relied on extrinsic evidence outside the pleadings." (citations omitted)). Rule 56, thus, provides the correct standard of review.[6] *See Lawrence*, 919 F.2d at 1530 ("When the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction.").

Having clarified the governing standard of review, the court finds that the Magistrate Judge's recommendation that the United States's motion be granted is due to be rejected.

---

[6] It does not appear that the Magistrate Judge actually weighed the evidence, as there essentially was no evidence to weigh. This is because, as the Magistrate Judge correctly found, Vernesia Womack's evidence was largely hearsay and, thus, not admissible. (Doc. # 32, at 14-16.) Nonetheless, elaboration on the correct standard of review is necessary to the ultimate disposition of the FTCA claim.

This court's ruling is based upon the procedural posture of the case, not the merits of whether Dr. Smalheiser was an independent contractor.

In *Eaton v. Dorchester Development, Inc.,* 692 F.2d 727 (11th Cir. 1982), which was brought under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-1720, the Eleventh Circuit reversed the district court's Rule 12(b)(1) dismissal of the complaint based on a factual attack on subject matter jurisdiction. *Id.* at 734. The court explained that, because the question "of whether the court has subject matter jurisdiction will hinge on whether the defendant owe[d] a duty to plaintiffs under the Act, that determination will, at the same time, effectively decide the merits of plaintiffs' claim." *Id.* And, "[w]here the jurisdictional issues are intertwined with the substantive merits, 'the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other.'" *Id.* at 733 (quoting *Chatham Condo. Ass'ns v. Century Village, Inc.*, 597 F.2d 1002, 1011 (5th Cir. 1979)). The court "remand[ed] for further discovery of jurisdictional facts." *Id.* It observed, "[T]he argument against premature dismissal on 12(b)(1) grounds is particularly strong when the basis of jurisdiction is also an element of plaintiffs' cause of action on the merits." *Id.*

Similarly, in *Chatham Condominium Ass'ns,* the former Fifth Circuit cautioned that "dismissal for lack of subject matter jurisdiction . . . prior to giving the plaintiff ample opportunity for discovery, should be granted sparingly." 597 F.2d at 1012. In that case, the "discovery had barely begun" when the district court entered its dismissal order based upon

the absence of subject matter jurisdiction. *Id.* "With the facts not fully developed, a fair and conclusive resolution of the jurisdictional issue [could] not be made[.]" *Id.*

And so it is here also. An overview of the substantive law explains why a Rule 56 ruling would be premature. In *Bravo v. United States*, 532 F.3d 1154 (11th Cir. 2008), the Eleventh Circuit reiterated that in this circuit "the 'control test' [governs] whether an individual is a government employee or an independent contractor." *Id.* at 1159. "'[A] person is an employee of the Government if the Government controls and supervises the day-to-day activities of the alleged tortfeasor during the relevant time." *Id.* (quoting *Patterson & Wilder Constr. Co. v. United States*, 226 F.3d 1269, 1274 (11th Cir. 2000)). The control test "does not require that the government exercise actual control over an individual. It is enough that the government has reserved the power or authority to control him." *Id.*; *see also Simpson*, 184 F. App'x at 909 ("The distinction between an employee and an independent contractor turns on the power of the United States 'to control the detailed physical performance of the contractor.'" (quoting *Logue v. United States*, 412 U.S. 521, 527-28 (1973))).

*Bravo* also held that the focus for resolving whether a tortfeasor is a federal government employee is on the United States's authority to control the contractor's performance, and not on whether the United States actually exercised that authority. *See* 532 F.3d at 1159-60. "'[I]t is not necessary that the Government continually control all aspects of the individual's activities, so long as it has the authority to do so given the nature of the

13

task.'" *Id.* at 1159-60 (quoting *Patterson*, 226 F.3d at 1274); *see also Linkous v. United States*, 142 F.3d 271, 275-76 (5th Cir. 1998) ("[I]f control were the only factor, then no professional who exercises professional judgment could be considered a federal employee under the FTCA.").[7]

In *Bravo*, the contractual provisions were paramount in the determination of whether the negligent physician, who worked at a naval hospital, was a federal government employee, and were relied upon almost exclusively by the court. *See* 532 F.3d at 1160 ("The question of whether the Naval Hospital reserved the right to control [the physician's] activities is one whose answer depends on the various contractual provisions."). In *Broussard v. United States*, 989 F.2d 171 (5th Cir. 1993), the Fifth Circuit also relied principally on an examination of the governing contract to determine whether the emergency room physician

---

[7] In *Linkous*, the Fifth Circuit also cited the non-exhaustive factors listed in § 220 of the *Restatement (Second) of Agency* on the definition of a servant. *See* 142 F.3d at 276. Those factors are:

> "(a) [T]he extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relation of master and servant; and
> (j) whether the principal is or is not in business."

Id. (quoting *Restatement (Second) of Agency* § 220).

was an independent contractor. *See id.* at 176 (holding that the contractual arrangement governing the physician's relationship with the army hospital placed the physician "'outside of the parameters of an employer-employee relationship with the Government.'" (citation omitted)).

The foregoing principles of substantive law reveal the shortcomings in the evidentiary record. Vernesia Womack's evidence, as the Magistrate Judge correctly found, is based largely upon hearsay and, thus, not admissible under the summary judgment standard.[8] (Doc. # 32, at 14-16.) At the same time, however, the United States's evidence also is lacking. The United States did not support its motion with a copy of the contract governing Dr. Smalheiser's working relationship with the CAVHCS. If there was not such a contract, that fact has not been argued or established.[9] Here, the United States's only evidence consists of two declarations from Dr. Smalheiser.[10] The statements in those declarations are, for the most part, conclusory. They do not permit a meaningful analysis of the control test. On this record, the court believes that the best course is to reject the Magistrate Judge's

---

[8] On a motion for summary judgment, a court can consider evidence that is admissible on its face, or that can be reduced to admissible form and complies with Federal Rule of Civil Procedure 56(e). *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986); *Macuba v. DeBoer*, 193 F.3d 1316, 1322-24 (11th Cir. 1999).

[9] Whether a contract exists is one question that needs to be answered before a ruling can be issued. Obviously, if there is a contract, it needs to be submitted.

[10] In those declarations, Dr. Smalheiser says that during the pertinent time, (1) he was "a contract doctor in the emergency room" (Smalheiser Decl. ¶ 3), (2) he was not a VA employee (Smalheiser Decl. ¶ 4), (3) he "was paid on an hourly basis" (Smalheiser Decl. ¶ 4), (4) he was not supervised by the VA (Smalheiser 2d Decl. ¶ 3), (5) he "exercised independent clinical judgment at all times when treating patients" (Smalheiser Decl. ¶ 4), and (6) he "was not a VA resident or fellow at CAVHCS and ha[d] never been enrolled in a VA training program" (Smalheiser 2d Decl. ¶ 3).

recommendation that Vernesia Womack's FTCA claim be dismissed pursuant to Rule 12(b)(1), and to refer that claim back for further discovery, and for later disposition, if appropriate, on a properly-filed motion to be reviewed under Rule 56's strictures.

### B.     The United States's Rule 56 Challenge

The United States also has argued that it is entitled to summary judgment on the ground that "the care and treatment [Vernesia Womack] received at the VA Hospital complied with the applicable standard of care." (Doc. # 24; *see also* Doc. # 23).) The Magistrate Judge has recommended that the Rule 56 motion be denied as moot. (Doc. # 32, at 18.) Given that Dr. Smalheiser's status as either a federal government employee or an independent contractor cannot be resolved on the present record, the United States's summary judgment motion (Doc. # 23), challenging Vernesia Womack's claim that she received inadequate medical care, will be denied as premature. The United States may renew, if necessary, its Rule 56 summary judgment motion at the appropriate time.[11]

### IV. CONCLUSION

For the foregoing reasons, it is ORDERED that:

(1)     The Magistrate Judge's Recommendation (Doc. # 32) that this court grant the United States's Motion to Dismiss Ganesia L. Womack's Complaint (Doc. # 25) is ADOPTED.  The motion to dismiss (Doc. # 25), therefore, is GRANTED, and Ganesia L.

---

[11] In light of the court's findings herein, it is unnecessary to address Vernesia Womack's objection suggesting that the United States should be equitably estopped from asserting that Dr. Smalheiser is not a federal government employee. Should Ms. Womack desire to rely upon that argument in the future, it must be raised again.

Womack's action is DISMISSED without prejudice.  The Clerk of the Court is DIRECTED to close Ganesia L. Womack's case, Civil Action No. 2:08-CV-664-WKW.

(2)     The Magistrate Judge's Recommendation (Doc. # 32) that this court grant the United States's motion to dismiss (Doc. # 23) Vernesia Womack's claim alleging a HIPAA violation is ADOPTED.  The motion to dismiss the HIPAA claim (Doc. # 23), therefore, is GRANTED, and Vernesia Womack's HIPAA claim is DISMISSED without prejudice.

(3)     The Magistrate Judge's Recommendation (Doc. # 32) that this court grant the United States's motion to dismiss Vernesia Womack's FTCA claim (Doc. # 23), pursuant to Rule 12(b)(1), is REJECTED, and the motion to dismiss (Doc. # 23) the FTCA claim is DENIED.

(4)     The Magistrate Judge's Recommendation (Doc. # 32) to deny as moot the United States's summary judgment motion (Doc. # 23) is REJECTED, and the motion (Doc. # 23) instead is DENIED as premature, with leave to renew if and when appropriate.

(5)     Vernesia Womack's FTCA claim is REFERRED BACK to the Magistrate Judge for further proceedings not inconsistent with this opinion.

DONE this 12th day of August, 2009.

                                          /s/   W.  Keith Watkins
                                    UNITED STATES DISTRICT JUDGE