IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| VERNESIA LEE WOMACK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:08-cv-534-WKW |
| ) | |
| UNITED STATES OF AMERICA ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 9, filed August 25, 2008). Now pending before the Court are the *United States' Renewed Motion to Dismiss and for* and brief in support (Docs. 53-54, filed June 30, 2010). For good cause herein shown, it is the recommendation of the Magistrate Judge that the Court GRANT the motion for summary judgment.

**I. PARTIES AND COMPLAINT**

*Pro se* Plaintiff, Vernesia Lee Womack ("Vernesia Womack") is a resident of Ozark, Alabama, a location in the Middle District of Alabama. Vernesia Womack initiated this action on July 7, 2008. *See* Doc. 1, Complaint in Civ. Act. No.2:08-cv-534-WKW (M.D. Ala. 2008). On August 12, 2009, the Court dismissed Womack's claims alleging violations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The Court also

dismissed the claims brought by Womack's daughter. Thus, the sole remaining claim is the claim for inadequate medical care brought under the Federal Tort Claims Act, ("FTCA"), 28 U.S.C. §§ 2671- 2680.

Vernesia Womack specifically alleges on November 18, 2005 she went to the emergency room at Central Alabama Veteran Health Care System ("CAVHCS") Hospital in Montgomery, Alabama because she was experiencing "severe upper gastric stomach pain." *Id*. at ¶ 5. She states she was examined by Dr. Stuart Smalheiser. *Id*. During the examination Vernesia Womack avers she was not given proper medical care and the doctors and staff acted in an unprofessional manner. *Id*. Vernesia Womack was given a CT scan, but states no further medical care was provided that night. *Id*. Dr. Smalheiser made an appointment for Vernesia Womack to return the following Monday, November 21, 2005. On that day she received an ultrasound, but still received no resolution for her medical complaints. *Id*. As such, she filed a complaint with Ed Brown, the Patient Advocate for Veterans. *Id*. Vernesia Womack avers she remained in pain for the remainder of the week until she went to the Troy Regional Medical Center. *Id*. On or about November 25, 2005 she was admitted to the CAVHCS for emergency surgery which was then postponed until November 27, 2005. *Id*.

## II. MOTION TO DISMISS / MOTION FOR SUMMARY JUDGMENT

On June 30, 2010, the United States filed its renewed motion to dismiss and for summary judgment. *See* Docs. 53-54. The motion again asserts the physician referenced by Vernesia Womack - and whose actions are the underlying basis for her claims - is not an

employee of the United States, but rather an independent contractor. *Id*. Thus, the United States would be immune from suit. *Id*. The United States further asserts that even if the Court were to considered the physician an employee, summary judgment would be due because he met or exceeded the national standard of care. *Id*.

On July 30, 2010, Womack filed her response. *See* Doc. 57. In the response, Womack argues that the VA never informed her that Dr. Stuart Smalheiser - the physician in question - was an independent contractor *Id*. at p. 2. Specifically, Womack states that the independent contractor status was never mentioned until this lawsuit was filed. *Id*. She further argues that Dr. Smalheiser failed to comply with the standard of care and submits as evidence an affidavit from Mr. Ferman Miller, a CT Tech. *Id*. at p. 2 and Ex. 1, p. 10. On August 6, 2010, the United States filed its reply. *See* Doc. 58. The motion, which the Court treats as a motion for summary judgment, is now ripe for judicial review.

### III. STANDARD OF REVIEW

All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure. Although the court is required to liberally construe a *pro se* litigant's pleadings, the court does not have "license to serve as *de facto* counsel for a party. . .or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes

that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249. Only disputes about the material facts will preclude the granting of summary judgment. *Id.* at 249. A material fact is one "that might affect the outcome of the suit under governing law," and a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *accord Greenberg v. Bell-South Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); *see also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1277 (11th Cir. 2005) (quoting *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344-45 (11th Cir. 2003)) ("In determining whether an issue of fact is 'genuine' for the purpose of defeating summary judgment, we ask whether the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.'"). Thus, the initial burden of proof rests on the movant. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554; *Gonzalez*, 161 F.3d at 1294. This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence at trial, it would be insufficient to permit the non-movant from carrying its burden of proof. *Celotex*, 477 U.S. at 322-23; 106

S.Ct. at 2552-53. The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Rule 56, the non-movant must designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (conclusory assertions in absence of supporting evidence are insufficient to withstand summary judgment). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in original). The party opposing summary judgment must respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence supports his or her claim, and may not rest upon the mere allegations or denials of the pleadings. FED. R. CIV. P. 56(e); *Johnson v. Board of Regents of University of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted). Thus,

to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586 106 S.Ct. at 1356 (citations omitted).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *Johnson*, 263 F.3d at 1242-43. Further, "all justifiable inferences are to be drawn in [that party's] favor." *Anderson*, 477 U.S. at 255; 106 S.Ct. at 2513; *see also McCormick*, 333 F.3d at 1243 (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment <u>must</u> be granted. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. In other words, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Id*. at 322, 106 S.Ct. at 2552.

### IV. DISCUSSION AND ANALYSIS

**A.** **Independent Contractor under FTCA**

The FTCA "grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and rendered itself liable." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477, 114 S.Ct. 996, 1001, 127

L.Ed.2d 308 (1994) (citing *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 589, 7 L.Ed.2d 492 (1962)). However, that sovereign immunity is only waived when the negligent or wrongful act was committed by an "employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The United States has not waived its sovereign immunity for the actions of "any contractor with the United States." 28 U.S.C. § 2671. As Womack rests her claims on the actions of Dr. Smalheiser, she must establish that he was an employee, and not a contractor, of the United States. Plaintiff states Dr. Smalheiser was an employee while Defendant avers he was merely a contractor.

In her response, Womack argues that the VA "never mentioned that Dr. Stuart Smalheiser was an independent contractor until this lawsuit was filed with the courts." *See* Doc. 57 at p. 2. Beyond her references to specific names of people she talked to who allegedly did not mention the independent contractor status, Womack does nothing to counter the assertions by the United States. As such, the Court can only interpret this as an argument that the United States should be estopped from asserting the independent contractor defense.

Estoppel is rarely valid against the government. *Linkous v. United States*, 142 F.3d 271, 277 (5th Cir. 1998); *see also Sanz v. U.S. Sec. Ins. Co.*, 328 F.3d 1314, 1320 (11th Cir. 2003) (collecting cases where misinformation from the government did not give rise to equitable estoppel).[1] Courts have generally rejected the estoppel argument in independent

---

[1] The Supreme Court has never established that the doctrine of equitable estoppel can be applied against the government and, in fact, has implied that it can not be. *Tovar-Alvarez v. U.S. Attorney General*, 427 F.3d 1350, 1353-54 (11th Cir. 2005) (citing *Tefel v. Reno*, 180 F.3d 1286, 1302 (11th Cir. 1999) (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422,

contractor / FTCA cases. *See Peacock v. United States*, 597 F.3d 654, 660-61 (5th Cir. 2010); *Rutten v. United States*, 299 F.3d 993, 995 (8th Cir. 2002); *Lurch v. United States*, 719 F.2d 333, 340-41 (10th Cir. 1983). Further, "even if estoppel is available against the Government, it is warranted only if affirmative and egregious misconduct by government agents exists." *Sanz*, 328 F.3d at 1319-20 (citation omitted). In this case, Womack has not shown affirmative and egregious misconduct, but rather merely faults the government for the failure of VA employees to mention Dr. Smalheiser was an independent contractor. As such, the Court rejects the estoppel argument and turns to the merits of the independent contractor defense.

In *Bravo v. United States*, 532 F.3d 1154 (11th Cir. 2008) the Eleventh Circuit reiterated that to determine whether an individual is a government employee or an independent contractor courts should use the "control test." That is, "a person is an employee of the Government if the Government controls and supervises the day-to-day activities of the alleged tortfeasor during the relevant time." *Id*. at 1159 (quoting *Patterson v. Wilder Constr. Co. v. United States*, 226 F.3d 1269, 1274 (11th Cir. 2000)). This does not require the government to exercise actual control over an individual, but rather that it has reserved the power or authority to control him. *Id*.; *see also Simpson v. Holder*, 184 Fed. Appx. 904, 909 (11th Cir. 2006) ("The distinction between an employee and an independent contractor turns on the power of the United States to control the detailed physical performance of the

---

110 S.Ct. 2465, 2470, 110 L.Ed.2d 387 (1990) ("In sum, Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed.")).

contractor.") (quoting *Logue v. United States*, 412 U.S. 521, 527-28, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973))). Therefore, courts generally look to the contract to determine whether the physician was a federal government employee. *See Bravo*, 532 F.3d at 1160; *Broussard v. United States*, 989 F.2d 171, 176 (5th Cir. 1993).

The United States provides an affidavit from Kathleen H. McLean ("McLean") who was the Contracting Officer's Technical Representative (COTR) on the General Services Administration (GSA) contract for the Medical Officer of the Day Coverage at CAVHCS West Campus, Montgomery, Alabama. *See* Doc. 54, Exhibit 8 (Declaration of Kathleen H McLean). McLean states that Dr. Smalheiser was a contract physician supplied by Medical Providers, Inc. pursuant to a contract with Medical Providers, Inc. *Id*. Pursuant to the contract, the VA paid Medical Providers, Inc. for contract performance in providing weekend and holiday covered in the emergency room when VA staff physicians were off duty. *Id*. Contract physicians were paid on a hourly basis by Medical Providers, Inc. and Medical Providers, Inc. who in turn was also responsible for obtaining medical malpractice insurance for their contract physicians. *Id*. Further, VA staff physicians were not present to supervise contract physicians in the course of their patient care activities. *Id*. The VA did monitor the contract physician's medical records to ensure compliance with VA standards. *Id*. Attached to the declaration and affirmed by McLean is a true and correct copy of the contract in effect during the relevant time frame.[2] *Id*. (hereafter referred to as GSA Contract)

---

[2] McLean requested copies of the signed contract and renewals from the Logistics Department, but so far they have not provided them. Regardless, she declares under penalty of

The GSA Contract explicitly states that "[t]he parties of this contract agree that such contractor physicians shall not be considered VA employees for any purpose, and will function in the capacity of independent contractors of the Contractor." *Id*. at p. 9 "6. Personnel Policy." However, the Court cannot stop there under the control test with regard to Dr. Smalheiser. Rather, the Court must review whether the VA reserved the power or authority to control him. The contract does set forth standards for the contract physicians. For instance, it states "contract physicians must apply for Medical Staff membership and request privileges. He/She shall agree to abide by the medical staff bylaws and rules and other policies and procedures of the Department of Veteran Affairs." *Id*. at p. 4, Contract Specification, subsection (b). It also states "[t]he Medical Officers of the Day shall conduct themselves in a professional manner, treating patients, visitors and staff with courtesy and respect. The MOD must respect Patients' Rights as specified in the CAVHCS Medical Staff Bylaws and Rules (Attachment) and adhere to VA Patient Care Standards (Attachment)." *Id*.

---

perjury that the attached contract is a true and accurate copy of the contract in effect in November-December 2005. Specifically, she provides a reproduction/ unsigned copy of the original contract and notes that the contract was in effect from June 1, 2005 until May 31, 2010. The original contract covered June 1, 2005-September 30, 2005 and then was extended four times for four additional one-year periods by mutual agreement of the parties. *See* Doc. 54, Exhibit 8 at ¶ 9-10.

On a motion for summary judgment, a court can consider evidence that is admissible on its face, or that can be reduced to admissible form and complies with Fed. R. Civ. P. 56(e). *Celotex*, 477 U.S. at 323-24 (1986); *Macuba v. DeBoer*, 193 F.3d 1316, 1322-24 (11th Cir. 1999). For the purposes of summary judgment, the Court finds this contract to be authenticated and sufficient as McLean in her sworn affidavit declares that she is personally familiar with the terms of the contract and the copy is true and accurate. *See* FED. R. EVID. 901.

at p. 5, subsection (c). Finally, it provides certain requirements to be met such as participating in fire drills, completing appropriate paperwork, and expectations of familiarity with national standards utilized at the facility. *Id*. at p. 5. However, none of these rise to the level of exerting actual control over the physician. *See, e.g., United States v. Orleans*, 425 U.S. 807, 815, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) ("Although the contract required the county jail to comply with Bureau of Prisons' rules and regulations prescribing standards of treatment, and although the United States reserved rights of inspection to enter the jail to determine its compliance with the contract, the contract did not authorize the United States to physically supervise the jail's employees."); *Logue v. United States*, 412 U.S. 521, 530, 93 S.Ct. 2215, 2220-21, 37 L.Ed.2d 121 (1973) (rules specifying standards of treatment for federal prisoners, including methods of discipline, rules for communicating with attorneys, visitation privileges, mail, medical services, and employment did not convert contractor to federal employee as the deputy marshal had no authority to contract the activities of the sheriff's employees). Further, McLean states the "VA staff physicians were not present when the contract physicians were treating patients, and the VA did not supervise the contract physicians in their patient care activities" *See* Doc. 54, Exhibit 8 at ¶ 7. This is consistent with the affidavit submitted by Dr. Smalheiser wherein he states [t]he VA did not supervise my day-to-day care and treatment of patients. Rather I exercised independent clinical judgment at all times when treating patients in the LSU."[3] *See* Doc. 54, Exhibit 1 at ¶ 4. While his statements are conclusory, they align

---

      [3]     As noted in McLean's affidavit, the emergency room was then known as the Life Support Unit (LSU). *See* Doc. 54, Exhibit 8, FN 1.

with the provisions of the contract as well as the affidavit from McLean. Thus, unlike the doctor in *Bravo*, Dr. Smalheiser was not supervised by VA physicians as they were not present at the hospital during the patient care activities

In short, the United States has issued specific factual denials that challenge Vernesia Womack's allegation that Dr. Smalheiser was an employee of the government. These specific factual declarations - including a copy of the GSA contract as well as affidavits by McLean and Dr. Smalheiser - are sufficient to shift to Womack the burden of producing evidence supporting jurisdiction. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1277 (11th Cir. 2009) (citation omitted). Womack attempts to respond and establish jurisdiction by making unsworn statements regarding her perception that Dr. Smalheiser was an employee of the VA. Specifically she states:

> It was to plaintiff's understanding that Dr. Stuart Smalheiser was a federal worker while working on the grounds of a government facility and that CAVHCS had taken the necessary steps by following policy and procedure BEFORE hiring their federal working medical staff to give treatment and care to its patients. The burden to know whether or not a physician is on contract or a federal employee can no be "laid on the back of patients" that because it was a "federal holiday" CAVHCS will not supervise any of their physician's activities when they are caring for the patients. Therefore, that statement led me to believe that whenever there's a federal holiday any doctor, lay person, criminal, thief, etc. can do whatever seems right to them regardless of whatever policies and procedures are put in place to monitor their activity, and when they do what they shouldn't they won't be reprimanded for it. If this is so then our whole legal system just went out the door.

*See* Doc. 57 at p. 3-4. Womack further states the fact that the government provided unsigned copies of the contract mean that Dr. Smalheiser must be a federal employee. *Id*. at p. 6.

Page 12 of 18

"Unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of summary judgment." *McCaskill v. Ray*, 279 Fed. Appx. 913, 915 (11th Cir. 2008) (unpublished) (quoting *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980)). Therefore, Womack's unsworn assumptions and statements regarding Dr. Smalheiser's status cannot be considered by this Court. Further, as the Court already noted, the government's unsigned copy - declared to be true and accurate by a person familiar with its terms - is authenticated for summary judgment purposes. Thus, her assumptions pertaining to the lack of "signed" copy are also rejected.

Based on the above, the Court concludes Plaintiff proffered no competent evidence to establish jurisdiction in opposition to the denials of the jurisdictional allegations. The United States provided uncontroverted evidence - including two declarations by Dr. Smalheiser, the GSA Contract, and the declaration by McLean - that Dr. Smalheiser was not a VA employee, but rather a contractor provided by Medical Providers, Inc. As a result, she has not met her burden of establishing jurisdiction and consequently the claims warrant dismissal.

**B.      Standard of Care**

In the alternative, even if Womack were able to establish jurisdiction, her claims still fail because the United States has shown that the medical care and treatment that she received met or exceeded the national standard of care. As the Court already determined that there is no jurisdiction, minimal explanation is required as to the standard of care.

Under the FTCA, the United States is liable to the same extent as a private person "in

accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Therefore, Womack's FTCA claim is governed by Alabama law. Under Alabama law, all claims for medical injury are governed by the Alabama Medical Liability Act of 1987 ("AMLA"). *Houston County Health Care Authority v. Williams*, 961 So.2d 795, 810 (Ala. 2006) (citing ALA. CODE § 6-5-540, *et seq*.). ALA. CODE § 6-5-548(a) provides:

> In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.

The Alabama Supreme Court has specifically held that ""[i]n a medical-malpractice action, the plaintiff ordinarily is required to present expert testimony as to the relevant standard of care." *Cobb v. Fisher*, 20 So.3d 1253, 1257 (Ala. 2009) (quoting *Martin v. Dyas*, 896 So.2d 436, 441 (Ala. 2004)). "A plaintiff in a medical-malpractice action must also present expert testimony establishing a causal connection between the defendant's act or omission constituting the alleged breach and the injury suffered by the plaintiff." *Id*. (quoting *Sorrell v. King*, 946 So.2d 854, 862 (Ala. 2006)). An exception to the expert testimony rule is "where want of skill or lack of care is so apparent as to be understood by a layman, and requires only common knowledge and experience to understand it." *Id*. (citations and internal modifications omitted). The Alabama Supreme Court has recognized certain situations as following into that exception such as "(1) where a foreign instrumentality is found in the plaintiff's body following surgery; (2) where the injury complained of is in no way connected to the condition

for which the plaintiff sought treatment; (3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and (4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct." *Id*. (citations omitted). The Court finds that none of these situations are applicable here nor is there any other reason to provide an exception to the expert testimony rule. In fact, the Court finds this type of case is the precise reason why the AMLA requires expert medical testimony.

The United States submitted expert testimony from Dr. Patrick Okolo establishing that Dr. Smalheiser met or exceeded the national standard of care in his evaluation and treatment of the plaintiff. Dr. Okolo is an Assistant Professor of Medicine at the Johns Hopkins University School of Medicine in Baltimore, MD and the Chief of Endoscopy at Johns Hopkins Hospital. He is board certified by the American Board of Internal Medicine in Internal Medicine, Gastroenterology, and Hepatology. *See* Doc. 54, Exhibit 7, "Declaration of Patrick I. Okolo, III, MD, MPH." In his affidavit, Dr. Okolo provides his opinion that the medical care rendered by CAVHCS - and in particular Dr. Smalheiser - was proper, evidence-based and complete, and it satisfied the national standard of care. Dr. Okolo further opines that Dr. Smalheiser exercised reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice would. Dr. Okolo goes on to explain the reasons for his conclusions. *Id*.

Womack provided no expert testimony to rebut the expert testimony presented by the

United States. In her response, she proffers the affidavit of CT Tech Ferman Miller and avers that his affidavit establishes the breach of standard of care. *See* Doc. 57, Affidavit of Ferman Miller. This is simply not the case.

In an alleged breach of standard of care case, the AMLA requires that only a "similarly situated health care provider" may testify as an expert witness against another health care provider. Ala Code § 6-5-548(e). To be "similarly situated," the expert must meet the following requirements:

  (1) Is licensed by the appropriate regulatory board or agency of this or some other state.

  (2) Is trained and experienced in the same specialty.

  (3) Is certified by an appropriate American board in the same specialty.

  (4) Has practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred.

Ala. Code § 6-5-548(c). A CT Tech, whose affidavit is submitted to contradict the testimony of not only Dr. Smalheiser but also Dr. Okolo, does not meet any of those requirements. As such, his affidavit cannot be used to counter the testimony submitted by Dr. Okolo and Dr. Smalheiser. As a result, Womack failed to proffer any expert testimony to support her malpractice claim. From the uncontroverted expert testimony submitted by the United States, the Court must find that the standard of care was not breached and that Dr. Smalheiser met and exceeded the required standard of care. Consequently, summary judgment is due to be

granted.

### V. CONCLUSION

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that

(1)  The *United States' Renewed Motion to Dismiss and for Summary Judgment* (Doc. 53) be **GRANTED**.

(2)  Plaintiffs' claims be **DISMISSED.**

(3)  Any outstanding motions be **DENIED as moot**.

**IT IS FURTHER ORDERED** that the parties file any objections to the this Recommendation on or before **February 14, 2011.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions

of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 31st day of January, 2011.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE